UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RASOUL JOUMAAH, et al.,

    Plaintiffs,

v.

DETECTIVE JAMES MCMAHON, et al.,

    Defendants.
_____/

Case No. 16-11802
Honorable Victoria A. Roberts

SARMAD HABIB, et al.,

    Plaintiffs,

v.

DETECTIVE JAMES MCMAHON, et al.,

    Defendants.
_____/

Case No. 16-11891
Honorable Paul D. Borman

DANIEL KHALED DABISH, et al.,

    Plaintiffs,

v.

DETECTIVE JAMES MCMAHON, et al.,

    Defendants.
_____/

Case No. 16-12336
Honorable Nancy G. Edmunds

**ORDER GRANTING DEFENDANT ATPA'S
MOTIONS TO DISMISS [ECF NOS. 14, 15, 18]**

    **I.   INTRODUCTION**

    The Michigan Automobile Theft Prevention Authority ("ATPA") is a state-wide organization formed by Michigan statute; its function is to prevent automobile theft in the

State of Michigan. Plaintiffs seek money damages from the ATPA for alleged constitutional violations and state law torts. The ATPA claims it is an arm of the State of Michigan, entitled to sovereign immunity. The Court agrees, and **GRANTS** ATPA's motions to dismiss.

## II.   BACKGROUND

### a. Procedural History

Plaintiffs (1) Rasoul Joumaah, Gayle Joumaah, Amjad Saber, Yousra Jalal, Sam's Tire Shop; (2) Sarmad Habib, M&M Cars; and, (3) Danial Dabish, Sasha Dabish, and Livernois Collision (collectively "Plaintiffs") filed three separate lawsuits against six Defendants. The Defendants are detectives James McMahon and Michael Stout; Anne Moise, Police Chief for the City of Hamtramck; the City of Hamtramck; the City of Highland Park; and, the ATPA.

The three cases are before Judges Victoria A. Roberts, Paul D. Borman, and Nancy G. Edmunds. The cases present common questions of fact and law: they each allege racially targeted investigations of Arab Americans by the same officers and illegal searches and seizures.

Each case has a pending motion to dismiss that presents as a matter of first impression, whether the ATPA is entitled to Eleventh Amendment immunity. The underlying facts of the cases are irrelevant to these motions.

To promote judicial efficiency and avoid the risk of inconsistent adjudications, the cases were consolidated under Local Rule 83.11(b)(3), for the sole purpose of deciding the ATPA's motions to dismiss. *See* E.D. Mich. LR 83.11(b)(3) ("to promote judicial

efficiency in cases not requiring reassignment under the Rules, the Judges…may jointly order consolidation of some or all aspects of related cases.").

### b. The Michigan Automobile Theft Prevention Authority

In 1992, the Governor of Michigan approved the ATPA Act ("Act"). Mich. Comp. Laws §§ 500.6101-.6111. The ATPA provides state-wide education programs and financial support to law enforcement agencies, non-profit organizations, judicial agencies, and prosecutors – all aimed at the prevention of automobile theft in Michigan. *Id.* § 500.6107.

The ATPA is managed by a seven-member board comprised of representatives from law enforcement, automobile insurers, and consumers of automobile insurance. *Id.* § 500.6103(3). The Governor appoints this board with the advice and consent of the Michigan Senate. *Id.*

The Director of the Michigan Department of State Police supervises the ATPA's budget, procurement, and administration of its employees. *Id.* Michigan State Police headquarters house the ATPA. *Id.*

The ATPA is funded in part by an annual assessment paid by each Michigan automobile insurer; other funding sources are grants, donations, and loans. MCL § 500.6107(1). These funds are "not to be considered State money," and can "only be used for automobile theft prevention efforts" and "to pay the costs of administration of the authority." MCL § 500.6107(3)-(5). The ATPA must report its activities and finances to the Governor and Legislature annually. MCL § 500.6110(3).

These facts are not in dispute.

3

### III. STANDARD OF REVIEW

#### a. Motion to Dismiss

The ATPA brings its motions under Fed. R. Civ. P. 12(b)(1). The burden is on Plaintiffs to prove jurisdiction. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). To defeat these motions, Plaintiffs "must show that the complaint 'alleges a claim under federal law, and that the claim is substantial.'" *Mich. S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc.*, 287 F.3d 568, 573 (6th Cir. 2002) (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996)). A Rule 12(b)(1) motion will be granted if "taking as true all facts alleged by the plaintiff[s], the court is without subject matter jurisdiction to hear the claim." *Id.*

The ATPA also files its motions under Fed. R. Civ. P. 12(b)(6), which tests the legal sufficiency of claims alleged in the complaint. "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matters, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

#### b. Eleventh Amendment Immunity

The Eleventh Amendment provides that: "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend, XI.

Although the language of the Eleventh Amendment "applies only to suits against a State by citizens of another State," the Supreme Court "extended the Amendment's

4

applicability to suits by citizens against their own States." *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). Eleventh Amendment immunity also extends to state instrumentalities that are "arm[s] of the State." *See Regents of Univ. of Calif. v. Doe,* 519 U.S. 425, 423-31 (1997).

In sum, the Eleventh Amendment bars lawsuits by private individuals against states and their agencies in federal court – unless the state consents to be sued or Congress abrogates immunity. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).

## IV. DISCUSSION

### a. *Government Entity That Acts As An "Arm of the State"*

The narrow issue here is whether the ATPA is entitled to Eleventh Amendment sovereign immunity as an agency of the State of Michigan.

To determine if the ATPA is an "arm of the State," the Court weighs these factors: "(1) the State's potential liability for a judgment against the [ATPA]; (2) the language by which State statutes and State courts refer to the [ATPA] and the degree of State control and veto power over the [ATPA's] actions; (3) whether State or local officials appoint the board members of the [ATPA]; and, (4) whether the [ATPA's] functions fall within the traditional purview of State or local government." *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 775 (6th Cir. 2015) (citing *Ernst v. Rising*, 427 F.3d 351, 359 (6th Cir. 2005) (holding that the Michigan Judges' Retirement System is an "arm of the State" and entitled to Eleventh Amendment immunity)).

Applying these factors, the Court concludes that the ATPA is an arm of the State of Michigan and entitled to Eleventh Amendment immunity.

1. *Factor 1 – The State's Potential Liability For A Judgment Against The ATPA*

This factor requires the Court to consider who would pay a judgment against the ATPA if liability against it were found. Importantly, the State of Michigan Attorney General, representing the ATPA, concedes that responsibility would fall to the State of Michigan. *See* Defendant's Brief at 17.

Several provisions of the Act suggest the ATPA could not pay a judgment. For example, the Act prohibits the State from appropriating money from the ATPA's fund for anything but the ATPA's purpose. *See* MCL § 500.6107(4) ("[m]oney in the automobile theft prevention fund shall only be used for automobile theft prevention efforts and distributed based on need and efficacy as determined by the ATPA").

Secondly, the Act allows the ATPA to "procure insurance against any loss in connection with its property, assets, or activities." MCL § 500.6105.

This provision is likely for the protection of ATPA's assets, but also for the protection of the State's treasury. The fair inference to be drawn is that if the ATPA does not obtain insurance, the State of Michigan could be potentially liable, since no statutory authority allows the ATPA to pay a judgment against it. *See Kreipke*, 807 F.3d 768, 775 (citing *Ernst,* 427 F.3d at 359) (the Court assesses "the State treasury's potential legal liability for the judgment, not whether the State treasury will pay for the judgment"); *Regents of Univ. of Calif.,* 519 U.S. 425, 423-31 (the fact that a state instrumentality has the "ability…to require a third party to reimburse it, or discharge the liability [of litigation costs and adverse judgment]" does not divest the state agency of Eleventh Amendment immunity. "If the…State of California should buy insurance to protect itself against potential tort liability…it would not cease to be "one of the United States.").

The first *Ernst* factor creates a strong presumption that the ATPA is an arm of the State.

### 2. Factor 2 – How State Law Defines the ATPA

In assessing how State law defines the ATPA, the Court considers the powers of the ATPA, how the State defines and refers to it, and the amount of control and oversight exercised by the State. *Ernst*, 427 F.3d at 359.

Although the Court has not uncovered any cases construing the ATPA Act, Michigan state courts and the Sixth Circuit have construed the Michigan State Housing Development Authority ("MSHDA") Act for purposes of determining the legal status of the MSHDA and its entitlement to immunity. The MSHDA and the ATPA have much in common, and the Court finds the MSHDA law and cases instructive.

The MSHDA provides state-wide affordable housing assistance to Michigan residents through public and private partnerships. Similar to the ATPA, it has the authority to: (1) sue and be sued; (2) make and execute contracts; (3) solicit and accept gifts, grants, and loans; and, (4) invest money held in reserve. MCL § 125.1422(a), (k), and (m); MCL §500.6105(a), (b), (d), and (e).

The Michigan Supreme Court considered the legal status of the MSHDA and recognized that the Michigan Legislature has the authority to give general corporate powers to certain agencies in the administration of civil government. *In re Advisory Opinion on Constitutionality of Act No. 346 of Pub. Acts of 1966,* 380 Mich. 554, 571, 158 N.W.2d 416, 423 (1968). Even with this grant of corporate powers to the MSHDA making it a "quasi-corporation," *id.* at 571, the Michigan Supreme Court held that the MSHDA "remains an instrumentality of the State." *See id.* ("[m]oneys of the State

housing development authority are not moneys of the State. The funds to be established under the act are trust funds to be administered by the State housing development authority. The State has no beneficial interest in such funds.").

Similarly, Michigan law treats the ATPA as an instrumentality of the State. Like the MSHDA, the ATPA is created by Michigan statute, and is explicitly defined as a "public body corporate and politic." MCL § 500.6103(1); MCL § 125.1421. The ATPA is an "authority authorized by law." MCL § 500.6103(1).

This *Ernst* factor also requires the Court to evaluate "the amount of control the State has over the entity." *Ernst*, 427 F.3d at 359. The State of Michigan retains substantial control and oversight over the ATPA. It mandates the ATPA's purpose, provides it with certain powers, and requires it to summarize its activities in an annual report to the Governor and Legislature. *See* MCL § 500.6110(3). It must also report biennially on the impact its efforts have on automobile theft rates in the State of Michigan. *See* MCL § 500.6111.

Finally, the Court must consider whether "the State has veto power over the agencies actions." *Ernst*, 427 F.3d at 359. Under the Michigan Constitution, the Governor has power to reduce the spending authority for the ATPA – with the approval of both the House and Senate appropriations committees. MI CONST Art. 5, § 20; *See* 2007 Mich. Op. Att'y Gen. No. 7203 (Apr. 25, 2007). With this ability to reduce funding, the State of Michigan has veto power over the ATPA's actions.

Given the construction courts have given to the MSHDA Act and the similarities between it and the ATPA Act; and, the amount of control and power the State has over

ATPA's activities – this factor weighs in favor of finding that the ATPA is an arm of the State of Michigan.

### 3. Factor 3 – Who Appoints the ATPA's Board

The third *Ernst* factor requires the Court to consider whether State or local officials appoint the members of the ATPA. *Ernst*, 427 F.3d at 359.

The Governor of Michigan appoints the seven-member board of the ATPA with the advice and consent of the Michigan Senate. MCL § 500.6103(3). This "weighs in favor of finding that [the ATPA] is an arm of the State." *See Kreipke*, 807 F.3d 768 (citing *Ernst*, 427 F.3d at 360–61) ("finding that the third factor supported finding that [the] judicial retirement system was [an] arm of the State where three of [the] five board members were appointed by the State governor and the other two were State officials")).

Factor three creates a strong presumption that the ATPA is an arm of the State.

### 4. Factor 4 – Whether the ATPA's Functions Fall Within the Traditional Purview of State Government

The final *Ernst* factor requires the Court to evaluate the operations of the ATPA to determine if its functions are more congruent with the functions of State government than local government.

In arguing that this factor dictates a finding of no immunity, Plaintiffs erroneously focus on the ATPA's funding sources rather than its functions. They argue that because some of the ATPA's funding comes from private sources, the ATPA could not possibly be an arm of the State. Plaintiffs are wrong. While the ATPA may receive funds from private donors, it also receives funds from Michigan automobile insurers, as well as "federal, State, or…local government." MCL § 500.6105(b).

Agencies and institutions with similar private and public funding sources have been granted sovereign immunity by the Sixth Circuit and district courts. *See Kreipke*, 807 F.3d 768, 775-781 (concluding that Wayne State University is a State agency and an "arm of the State" for Eleventh Amendment immunity purposes); *Dubuc v. Michigan Bd. of Law Examiners*, 342 F.3d 610, 615-616 (6th Cir. 2003) (concluding that the Michigan Board of Bar Examiners and the State Bar of Michigan are State agencies immune from suit under the Eleventh Amendment). See also *Reese v. State of Michigan*, 234 F.3d 1269 (Table), *5 -*6 (6th Cir. 2000) (concluding that the Michigan Law Enforcement Officers Training Council is a State agency and an "arm of the State" for Eleventh Amendment immunity purposes); *Ammend v. BioPort, Inc.*, 322 F. Supp. 2d 848, 855-862 (W.D. Mich. 2013) (concluding that the Michigan Department of Public Health and the Michigan Biologic Products Institute are State agencies immune from suit under the Eleventh Amendment).

Regardless of the source of ATPA funds, the ATPA performs a function traditionally within the scope of State government. *See Kreipke*, 807 F.3d 768, 780 (6th Cir. 2015) ("The question of whether a function is within the State's traditional purview is determined by analyzing whether the State has a history of performing or providing the same function or service. While this analysis may include funding considerations, the level of State funding should not be dispositive.").

The ATPA assesses the motor vehicle theft rates across the State of Michigan. *See* MCL § 500.6110(3). It provides financial assistance to State government agencies for state-wide programs to combat automobile theft. *See* MCL § 500.6107(3)(b)(i)-(vi). It also educates the public on how to reduce automobile theft. *Id.*; *see Ernst*, 427 F.3d at

10

361 (finding that the retirement system satisfied the fourth factor because it "operates on a state-wide basis and serves the officers of… State government as well as several other state-wide officials").

Factor four weighs in favor of finding that the ATPA is an arm of the State.

## V.     CONCLUSION

All four *Ernst* factors weigh in favor of finding that the ATPA is an arm of the State of Michigan.

Given the ATPA's similarities to other agencies to which the Sixth Circuit has granted Eleventh Amendment immunity, the Court finds that the ATPA is an arm of the State of Michigan and entitled to Eleventh Amendment immunity.

The Court **GRANTS** the ATPA's motions to dismiss and **DISMISSES** it from these cases.

**IT IS ORDERED.**

S/Victoria A. Roberts
United States District Judge

Dated:  December 19, 2016